FILED by ___ D.C.

ELECTRONIC

**AUG. 8, 2008**

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION

### CASE NO.

## 08-22235-CIV-GOLD/MCALILEY

DAVID RANCK,

      Plaintiff,

vs.

KATHERINE FERNANDEZ RUNDLE
individually, DON L. HORN,
individually, & JOSE ARROJO, individually

_____/

## **COMPLAINT**

Plaintiff, DAVID RANCK ("Plaintiff") sues the Defendants,

KATHERINE FERNANDEZ RUNDLE, individually ("Rundle"), DON L.

HORN, individually ("Horn") and JOSE ARROJO, individually (Arrojo), and

as grounds therefore alleges as follows:

### **PRELIMINARY STATEMENT**

1.    This is a case brought by the Plaintiff, an Assistant State Attorney,

for adverse employment actions in retaliation for Plaintiff engaging in

protected speech, as a public citizen, pursuant to the First and Fourteenth

Amendments to the United States Constitution, addressing a matter of public concern.  Accordingly, Plaintiff seeks damages as well as attorney's fees and litigation costs.

## JURISDICTION AND VENUE

2.     This Court has jurisdiction over this action pursuant to 42 U.S.C. §1331, federal question jurisdiction.

3.     Compensatory, declaratory, and equitable relief is sought pursuant to 28 U.S.C. §§2201, 2202, and 42 U.S.C. §1983.  Costs and attorney's fees may be awarded pursuant to 42 U.S.C. §1988.

4.     Venue is proper in the Southern District of Florida pursuant to 28 U.S.C. §1391(b) because all of the actions upon which this case is based were committed in the Southern District of Florida.

## THE PARTIES

5.     At all times relevant herein, Plaintiff was a United States citizen and lawful resident of Miami-Dade County, over the age of 18, and was employed as an Assistant State Attorney for the Miami-Dade State Attorney's Office as a Division Chief in the felony unit.

2

6.     At all times relevant herein, Rundle is and was the State Attorney for the Eleventh Judicial Circuit in and for Miami-Dade County Florida, and was responsible for, among other things, discipline of the personnel within her office, and is otherwise *sui juris.*

7.     At all times relevant herein, Horn was the Chief Assistant State Attorney for administration, in the Miami-Dade County State Attorney's Office, and through delegation of authority from Rundle, was able to discipline and/or terminate personnel within the office, and is otherwise *sui juris.*

8.     At all times relevant herein, Arrojo was the Chief Assistant State Attorney for special projects, in the Miami-Dade County State Attorney's Office, and through delegation of authority from Rundle, was able to discipline and/or terminate personnel within the office, and is otherwise *sui juris*.

9.     Plaintiff sues Defendants in their individual capacities.

10.     At all times relevant herein, Defendants acted under color of the statutes, customs, ordinances, practices and usage of the State of Florida.

3

## GENERAL ALLEGATIONS

11.     All conditions precedent to the initiation of this action against Defendants have been complied with or have been waived.

12.     At all times relevant hereto, Plaintiff was responsible for prosecuting homicide cases as a Division Chief in the felony unit of the Miami-Dade County State Attorney's Office ("State Attorney's Office").  In addition Plaintiff supervised three attorneys in the felony unit assigned to a particular Circuit Court Judge.

13.     At all times relevant hereto, the State Attorney's Office hierarchy in the felony division included prosecutors designated as "A" "B" or "C," depending on seniority and/or experience and ability with "A" prosecutors being the most senior.

14.     As a division chief, Plaintiff was responsible for homicide duty or police shooting duty.  Only the most senior homicide prosecutors were put on police shooting duty.

15.     Homicide duty required a division chief or experienced A prosecutor to respond to the scene of a suspected homicide in order to consult

4

and advise police personnel on all legal matters possibly affecting the investigation.

16.     Police shooting duty required a division chief or others from the administrative staff of the office to be on a rotation, and when called, to respond to police involved shootings or any other police involved in-custody deaths.

17.     As well, a less senior ASA would also be required to be part of the rotation and when called, would join the senior ASA at the scene of a police involved shooting or any other police involved in-custody deaths.

18.     When on the policy shooting rotation, an ASA was required to be on twenty-four hour call to respond to any police-involved shootings or any other police involved in-custody deaths, for a one week period, during certain times of a given year.

19.     On January 16, 2004, Plaintiff was on police shooting duty for that week and was called in the late afternoon on that date to respond to a police shooting, resulting in a death, at a residence in Miami Dade County, involving Miami Dade Police Officer Jorge Espinosa ("Espinosa").

5

20.     Upon arrival, Plaintiff met with and was briefed by Miami Dade Police Detective Charles McCully ("McCully"), the lead detective assigned to the investigation.

21.     As a result of the debriefing, Plaintiff knew that:   the residence had been burglarized by two males; the home owners were not inside; Espinosa had responded to the call and entered the residence; Espinosa shot and hit the decedent, identified as Leonardo Barquin ("Barquin") while both were inside the house;  the other male was not apprehended at the time; Espinosa said the decedent pointed a firearm at him and directed threats at him; Espinosa fired his weapon as a result; Barquin was hit, among other places at least once in the top of the buttocks and Barquin was found approximately one block from the house, without a gun in his possession or in his immediate surroundings.

22.     Also on the scene before Plaintiff's arrival was the PBA attorney, on behalf of Espinosa, as well as other PBA attorneys and the head of the PBA, John Rivera; Major Angus Butler ("Butler") and Lt. Mike Tabernero.

23.     Plaintiff, along with a PBA attorney, and McCully, conducted a

6

walk-through of the residence. During the walk-through, Plaintiff saw a spent casing on a shelf, in one of the bedrooms. Plaintiff did not notice blood in that bedroom. Plaintiff saw that portions of a bedroom window were broken.

24.     A continuation of the walk-through occurred outside the residence to the backyard. Plaintiff saw two spent casings on the grass near the broken window of the bedroom. In addition, Plaintiff saw blood in the same area.

25.     Barquin was found approximately one block away from the residence that had been burglarized. Plaintiff did not observe anything of evidentiary value where Barquin had been found.

26.     While on the scene, McCully told Plaintiff that Espinosa had been suspected of committing residential burglaries and as a result, a mobile tracking device had been previously attached to the underside of his assigned police vehicle.

27.     At some point while on the scene, Plaintiff was advised that the homeowner kept a firearm in a certain area inside the house. A search of that area did not result in a gun being found. The homeowner was questioned

7

about the whereabouts of the firearm and said he had recently taken it from his home to his place of business.

28.     Prior to Plaintiff leaving the scene, McCully told him that the second male suspect had been arrested and was found to be unarmed.

29.     At the time of Plaintiff's departure from the scene, the police had not yet gone to the homeowner's place of business to verify the location of his the homeowner's firearm.

30.     On Tuesday, January 20, 2004, at approximately 6:00 p.m., while at the State Attorney's Office, Plaintiff received a telephone call from McCully at which time McCully gave him further updates on the shooting investigation.  He told Plaintiff that during a custodial interrogation, the suspect who had been arrested denied that any threats had been made to Espinosa and denied that he or Barquin possessed firearms at the time of the burglary.  McCully further advised Plaintiff that the homeowner's gun had been found at the homeowner's business, which was remote from the crime scene.  Further, the gun was found in the place where the homeowner had indicated it would be found.  In addition, McCully advised that crime scene

8

technicians had not located a firearm in the area from the rear of the residence to where Barquin was ultimately found.

31.     During the January 20, 2004 telephone conversation, McCully told Plaintiff that on one or more occasions on that day a PBA attorney had called McCully to ask him his views of the shooting and the views of representatives of the State Attorney's Office. McCully then asked Plaintiff for his opinion of the efficacy of the shooting.  Plaintiff's response was that since there was no proof that Barquin possessed a firearm as well as the fact that at least one of the shots from Espinosa hit Barquin at the top of the buttocks, he could not say that the shooting was "justified" or "clean," at that point in time, of the investigation.   McCully told Plaintiff he would have to advise his chain of command on what Plaintiff told him about the shooting.

32.     Subsequent to the telephone conversation Plaintiff had with McCully, Butler called ASA Abraham Laeser ("Laeser"), a Major Crimes Assistant,  and advised of the telephone conversation between Plaintiff and McCully.

33.     On January 22, 2004, at 4:00 p.m. a meeting was held at the State

9

Attorney's Office, which included, among others, ASA Susan Dechovitz ("Dechovitz:), and Laeser. At that meeting, it was decided that Plaintiff would be taken off of the Barquin shooting investigation and would no longer be on the police shooting rotation.

34.     Early in the morning on January 23, 2004, Plaintiff met with Dechovitz in her office, at her request, at which time she advised that Butler had called Laeser and that Plaintiff was being removed from the Espinosa shooting investigation for diplomatic reasons.

35.     Subsequent to Plaintiff's meeting with Dechovitz, Plaintiff emailed Rundle and others, advising of his concern over the manner in which he was removed from the Espinosa investigation. Plaintiff further advised that he would be documenting his role in the investigation as well as the actions of the police personnel involved and the members of the State Attorney's Office involved in the Barquin shooting matter and would be seeking legal counsel. Finally, Plaintiff made a public records demand of all State Attorney's Office emails concerning the Barquin shooting investigation.

36.     On January 23, 2004, Plaintiff was told that there would be a

meeting in Horn's office at 11:00 a.m. At the meeting, convened by Horn and

attended by various ASAs, including the Office's employment counsel, Horn

told Plaintiff that his previous telephone conversation with McCully was

"totally inappropriate." Horn told Plaintiff that he was not the "State," and

should not have rendered an opinion regarding the Espinosa shooting to

McCully. Further, Horn advised that Plaintiff was no longer assigned to the

Espinosa investigation and would not be a part of the police shooting rotation.

37.     On January 27, 2004, Rundle emailed Horn and

ASA Kathleen Hoague ("Hoague"),requesting a meeting concerning the

various emails relative to Plaintiff's removal from the Espinosa investigation.

38.     On February 23, 2004, Plaintiff emailed Rundle, Horn, Hoague,

Dechovitz and others, a memorandum ("memo") documenting his account of

his removal from the Barquin shooting investigation. In the memo, Plaintiff

voiced concern over his removal and its potential future effect in similar

situations where the independence of the State Attorney's Office from the

particular policy agency may be questioned. Moreover, Plaintiff felt that his

11

removal was done to appease the police agency involved, because of Plaintiff's legitimate reservations about the propriety of the Barquin shooting, with which the police agency disagreed, and apparently wanted someone else assigned with a different opinion as to the propriety of the shooting.  None of the recipients of the email responded to Plaintiff, either orally or through written or electronic correspondence, including email.

39.    On July 13, 2007, at 8:40 a.m. Plaintiff emailed Horn, making a public records request for Plaintiff's email of February 23, 2004 , documenting his account of his removal from the Barquin shooting investigation.

40.    On July 13, 2007, at 9:48 a.m. Horn emailed Plaintiff confirming that Plaintiff was making a public records request for an email that Plaintiff had sent more than three years ago.

41.    On July 13, 2007, at 9:58 a.m. Plaintiff responded in an email to Horn that he was making a public records request in order to be in "legal" possession of the previous February 23, 2004 email.

42.    On July 13, 2007, at 3:35 p.m. Horn emailed Plaintiff, attaching the requested February 23, 2004 email, pursuant to Plaintiff's earlier public

12

records request.  At no time did Horn impose any restrictions on Plaintiff's use of the requested February 23, 2004 email.

43.     At some time prior to July 13, 2007, Plaintiff had a conversation with ASA Richard Scruggs ("Scruggs"), Plaintiff's replacement on the Barquin shooting investigation, about the status of the investigation.  As a result of the conversation with Scruggs, Plaintiff was led to believe, without reservation, that the investigation was over and would soon be officially closed.

44.     On May 5, 2008, Plaintiff made public the previously obtained February 23, 2004 email on a blog created by Plaintiff.  Plaintiff sent the link to the email to the email address of the Justice Building blog, a well known public forum used by lawyers practicing in the area of criminal law in State and Federal Court, in Dade County and the Southern District of Florida.

45.     On May 6, 2008, Rundle received an email with a copy of Plaintiff's email posting from the previous day.

46.     On May 6, 2008, Plaintiff met with ASA Jose Arrojo on unrelated office matters.  At some point, the meeting evolved into a general discussion of police shootings and how they should be handled.  Arrojo called Horn and

13

asked him to join in the meeting.  Thereafter, Horn joined the meeting and had a copy of Plaintiff's email posting.  Horn advised Plaintiff that the Barquin investigation was ongoing and not closed.  Plaintiff responded by reminding Horn that he had provided Plaintiff with a copy of the February 23, 2004 email, pursuant to Plaintiff's public records request, and thereby tacitly acknowledging that the investigation was closed.  Horn did not respond.

47.    During the May 6, 2008 meeting, Horn and Arrojo advised Plaintiff that they agreed with Plaintiff's earlier opinion expressed to McCully, on January 20, 2004, that the Barquin shooting was not a "clean" shooting. Indeed, Horn and Arrojo said that they had urged representatives from the United States Attorney's Office, Southern District of Florida, to pursue federal charges against Espinosa.

48.    During the May 6, 2008 meeting, neither Horn nor Arroyo ordered, directed or suggested that Plaintiff remove the email posting of May 5, 2008.

49.    Despite Horn's contention that the investigation was not closed, he made various public comments about the supposedly open investigation, to

14

a Daily Business Review reporter, in an article published on May 28, 2008.

50.     On May 28, 2008, Plaintiff made a public records request, via email, to the information specialist and the records custodian at the State Attorney's Office requesting any interoffice emails from January 16, 2004 to March 3, 2004 mentioning "Major Angus Butler" to or from Rundle, Lorna Solomon, Scruggs, Horn, Laeser, Abbe Rifkin ("Rifkin"),  Hoague, Deckovitz and Howard Pohl ("Pohl").

51.     Plaintiff received nothing responsive to the May 28, 2008 public records request, sent via email, with respect to any mention of "Major Angus Butler."

52.     On May 28, 2008, Plaintiff made a public records request, via email to the information specialist and the records custodian at the State Attorney's Office, requesting any and all interoffice emails from February 23, 2004 to March 3, 2004 concerning the investigation, specifically any mention of Plaintiff, Barquin and the investigation generally, to or from Rundle, Lorna Solomon, Scruggs, Horn, Laeser, Rifkin, Hoague, Deckovitz and Pohl.

53.     On June 5, 2008, Plaintiff received a response to the May 28, 2008

15

public records request for emails concerning the investigation. None of the emails received by Plaintiff, pursuant to his public records request, mentioned Plaintiff's February 23, 2004 memo.

54.     On July 8, 2008, Plaintiff was advised by Arrojo, via email, that a personnel meeting was going to be held with, among others, Arrojo, Horn, and Plaintiff.

55.     On or about July 10, 2008, Plaintiff had a telephone conversation with Horn, during which time Plaintiff asked what the upcoming personnel meeting was going to be about. Horn told Plaintiff he was going to be disciplined. When Plaintiff asked if he was going to be terminated, Horn advised that the issue would be discussed at the meeting.

56.     On July 14, 2008, a personnel meeting was held at the State Attorney's Office, at which time Horn, acting pursuant to his authority delegated from Rundle, told Plaintiff that he was being suspended without pay for a period of thirty (30) days, effective immediately. Among the reasons given to Plaintiff for the adverse employment action were, (a) divulging confidential information and engaging in offensive conduct as a result of

16

posting on a public website emails between senior Assistant State Attorneys relating to the Barquin investigation; (b) insubordinate and antagonistic conduct as a result of publicly posting additional material on a public website after being counseled by Horn; and (c) lack of candor to Chief Assistant State Attorney Howard Pohl regarding the expenditure of funds for an expert witness.

57.    At the July 14, 2008 personnel meeting, Horn provided Plaintiff a copy of an interoffice memorandum, from Horn and Arrojo, memorializing the disciplinary action being taken and the facts and conclusions on which the disciplinary action were based.

58.    In the interoffice memorandum, Horn and Arrojo concluded, among other things, that Plaintiff's actions in posting his February 23, 2004 email memo, caused the relevant police agency to question his loyalty to the police agency and ability to cooperatively work with the police agency.  This is the fallout with which Plaintiff was concerned in his February 23, 2004 email memo to Horn and others, when he specifically addressed the potential consequences that would arise by being removed from the Barquin shooting

17

investigation for offering an opinion with which the police agency disagreed.

59.     In the interoffice memorandum, Horn and Arrojo admitted that the Barquin investigation had been a matter of "great concern for the community generally."

60.     Despite the purported legitimate reasons for the adverse actions taken against Plaintiff, the real reason for the adverse action taken against Plaintiff was a result of Plaintiff's exercise of his First Amendment right  as a citizen, addressing matters of public concern, when Plaintiff published his February 23, 2004 email, obtained via a public records request, questioning the manner in which the Barquin investigation was being handled, stemming from Plaintiff's belief that the propriety of the Barquin shooting was questionable.

## **VIOLATIONS OF 42 U.S.C. §1983**

61.     Paragraphs 1-57 of the Complaint are incorporated herein as if fully set forth herein.

62.     During all times relevant herein, Defendants acted under color and pretense of law, under the color of statutes and customs of the State of Florida.

63.    Defendants engaged in the illegal and unconstitutional conduct described herein to the injury of Plaintiff and deprived Plaintiff of the rights, privileges and immunities secured to him by the First and Fourteenth Amendments to the United States Constitution and laws of the United States and the State of Florida.

64.    Defendants' actions taken against Plaintiff have deprived Plaintiff of the First Amendment right of expression and speech by a citizen, addressing matters of public concern, without having to suffer the consequences of discipline from his employer from exercising this protected right.

65.    Defendants knew or should have known that their actions deprived Plaintiff of his constitutional rights as set forth above, or acted with reckless and deliberate indifference to Plaintiff's constitutional rights, or subjected Plaintiff to such deprivations willfully, intentionally, maliciously, and with reckless regard to Plaintiff's rights.

66.    As a result of the unlawful and/or unreasonable and/or malicious attempt to punish Plaintiff, Defendants denied Plaintiff his rights guaranteed to him by the laws of the United States and the State of Florida, and further,

19

deprived Plaintiff of his First and Fourteenth Amendment rights to the United States Constitution and is in violation of 42 U.S.C. §1983.

67.     As a direct and proximate result of the actions of Defendants, Plaintiff has sustained damages and injuries as follows:

a.     Mental anguish, including but not limited to embarrassment, humiliation, and personal inconvenience;

b.     Legal fees and expenses;

c.     Loss of past earnings, amounting to approximately $6,300.00;

d.     Injury to reputation;

e.     Incidental expenses;

f.     Liquidated damages;

g.     Any other relief this Court deems just and proper.

68.     Plaintiff has retained counsel to represent him in this matter, which he is entitled to recover, along with litigation costs, pursuant to 42 U.S.C. §1988.

69.     Plaintiff demands trial by jury as to all issues so triable by jury.

20

WHEREFORE, Plaintiff, DAVID RANCK, demands judgment against Defendants, KATHERINE FERNANDEZ RUNDLE, DON L. HORN, and JOSE ARROJO, for damages as set forth above; declarative relief assuring that no future unlawful restrictions of his First Amendment right of expression and speech addressing matters of public concern will occur; the costs of this action; attorney's fees as provided by 42 U.S.C. §1988 and further demands judgment for punitive damages, and such other relief as the Court deems just and equitable and further demands trial by jury of all issues so triable by jury.

> ALLAN B. KAISER, P.L.L.C.
> Attorney's for Plaintiff
> 111 N.E. 1st Street, Ste. 902
> Miami, FL 33132
> Telephone: 305-858-6070
> Facsimile: 305-350-1915
>
> By: _____
>
> ALLAN B. KAISER
> Florida Bar No.  594628

FILED by __TS__ D.C.
ELECTRONIC

JS 44 (Rev. 2/08)

# CIVIL COVER SHEET

AUG. 8, 2008

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.) NOTICE: Attorneys MUST Indicate All Re-filed C

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

## I. (a) PLAINTIFFS

DAVID RANCK

## DEFENDANTS

KATHERINE FERNANDEZ RUNDLE, DON L. HORN, and JOSE ARROJO, all individually

(b) County of Residence of First Listed Plaintiff **DADE**
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant **DADE**
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT
LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)

Attorneys (If Known)

(d) Check County Where Action Arose: ☑ MIAMI- DADE  ☐ MONROE  ☐ BROWARD  ☐ PALM BEACH  ☐ MARTIN  ☐ ST. LUCIE  ☐ INDIAN RIVER  ☐ OKEECHOBEE  HIGHLANDS

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff
☑ 3 Federal Question (U.S. Government Not a Party)
☐ 2 U.S. Government Defendant
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

*Miami 08CV 22235 Gold/mcAll*

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R. R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. Security | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 900 Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities Employment | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | Under Equal Access to Justice |
| | ☐ 446 Amer. w/Disabilities Other | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus-Alien Detainee | | ☐ 950 Constitutionality of State |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | Statutes |

## V. ORIGIN (Place an "X" in One Box Only)

☑ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Re-filed- (see VI below)
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. RELATED/RE-FILED CASE(S).

(See instructions second page):

a) Re-filed Case ☐ YES ☑ NO    b) Related Cases ☐ YES ☑ NO

JUDGE _____    DOCKET NUMBER _____

## VII. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause (Do not cite jurisdictional statutes unless diversity):

42 USC 1983, Retaliatory adverse employment action resulting from Plaintiff's exercise of first amendment right of expression and speech.

LENGTH OF TRIAL via __5__ days estimated (for both sides to try entire case)

## VIII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ _____

CHECK YES only if demanded in complaint:

JURY DEMAND: ☐ Yes ☐ No

ABOVE INFORMATION IS TRUE & CORRECT TO THE BEST OF MY KNOWLEDGE

SIGNATURE OF ATTORNEY OF RECORD
s/Allan B. Kaiser

DATE
August 7, 2008

FOR OFFICE USE ONLY
AMOUNT $350.00   RECEIPT # 985072 IFP

08/08/08